IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM E. MESECHER,          )  Civil No.: 6:14-cv-01578-JE
                                )
           Plaintiff,      )  OPINION AND ORDER
                                )
        v.             )
                                )
CAROLYN W. COLVIN,           )
Acting Commissioner of Social Security,  )
                                )
          Defendant.    )
_____ )

       Kathryn Tassinari
       Brent Wells
       Harder Wells Baron & Manning, PC
       474 Willamette Street, Suite 200
       Eugene, OR 97401

            Attorneys for Plaintiff

       Billy J. Williams, Acting U.S. Attorney
       Janice Hebert, Asst. U.S. Attorney
       1000 S.W. 3rd Avenue, Suite 600
       Portland, OR 97204

       Sarah Moum
       Special Asst. U.S. Attorney
       Office of the General Counsel

Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

     Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff William Mesecher brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Disability Income Benefits (DIB) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, Plaintiff seeks a remand for further proceedings.

For the reasons set out below, the Commissioner's decision is affirmed.

## Procedural Background

Plaintiff filed an application for a period of disability and for DIB on September 20, 2010, alleging he had been disabled since December 7, 2007.

After his claims were denied initially and upon reconsideration, Plaintiff timely requested an administrative hearing.

On March 20, 2013, a hearing was held before Administrative Law Judge (ALJ) Marilyn Mauer.  Plaintiff and Kay Wise, a Vocational Expert (VE), testified at the hearing. Plaintiff was represented by counsel.

In a decision dated June 17, 2013, ALJ Mauer found that Plaintiff was not disabled within the meaning of the Act.

OPINION AND ORDER – 2

On August 6, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

### Background

Plaintiff was born in 1970 and was 43 years old at the time of the hearing in front of the ALJ. He graduated from high school and attended culinary school. He has past relevant work as a cruise ship cook and restaurant cook. Tr. 27.

### Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA)

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

## Medical Record and Testimony

The court has carefully reviewed the medical record and testimony and the parties are

familiar with both. Accordingly, the details of that evidence will be set out below only as they are relevant to the issues before the court.

**ALJ's Decision**

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2012.

At the first step of her disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the date of his alleged onset of disability on December 7, 2007 through his date last insured.

At the second step, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments: status-post crush injuries to left arm with open reduction internal fixation (ORIF); status-post crush injury to right leg with resulting leg length discrepancy; cognitive disorder status-post closed head injury; bilateral trochanteric bursitis; insulin dependent diabetes mellitus; bilateral hearing loss corrected with hearing aids; mild lumbar degenerative disc disease; and generalized anxiety disorder. Tr. 20.

At the third step, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ next assessed Plaintiff's residual functional capacity. She found that Plaintiff retained the capacity to perform less than the full range of light work in that

> [h]e could lift 20 pounds occasionally and 10 pounds frequently using both hands together. He could lift no more than 5 pounds using the left arm by itself. He could sit, stand, and walk for 6 hours each in an 8 hour workday for a combined total of 8 hours. He required the option to sit or stand at will while still performing essential tasks. He could never crawl or climb ladders, ropes, or scaffolds. He could occasionally stoop, crouch, kneel, and climb ramps and stairs. Mr. Mesecher was able to occasionally reach overhead with his left arm occasionally (sic). He was able to handle and finger with his dominant left hand

frequently, but not constantly. He was able to understand and carry out simple instructions in a predictable environment with clear expectations. He could not work in [a] position requiring public contact or teamwork assignments.

Tr. 23. In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were less than fully credible.

Based upon testimony from the VE, at the fourth step of her disability analysis the ALJ found that Plaintiff was unable to perform any of his past relevant work.

At the fifth step of her disability analysis, the ALJ found that Plaintiff could perform other jobs that existed in substantial numbers in the national economy. Based upon the testimony of the VE, she cited quality control/inspector of packaging, monitor of loss prevention, and label coding and marking as examples of such work.  The ALJ also noted that the VE testified that if Plaintiff were limited to only the occasional use of his dominant left hand for handling and fingering, he would be capable of performing the jobs of quality control/inspector of packaging, monitor of loss prevention, and inspection of small product assembly. Having concluded that Plaintiff could perform this work, the ALJ found that Plaintiff was not disabled within the meaning of the Act between the date of his alleged onset of disability and his date last insured.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991),

and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ improperly rejected his testimony, failed to give legally sufficient reasons for discounting the opinion of an examining physician, improperly rejected lay witness evidence and failed to include all of his limitations in the RFC and in the vocational hypothetical posed to the VE.

### I. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons, supported by substantial evidence, for finding that his allegations were not fully credible.

### A.  Standards

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."
Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted).

Pursuant to Social Security Ruling ("SSR") 16-3p, available at 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p), the ALJ is no longer tasked with making an overarching credibility determination, and must assess instead whether a claimant's subjective symptom statements are consistent with the record as a whole. The ALJ's decision in this case was issued well before SSR 16-3p became effective and there is an absence of binding precedent interpreting this new ruling or addressing whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retrospectively to a 2013 ALJ decision).

However, SSR 16-3p is a clarification of sub-regulatory policy, rather than a new policy. SSR 16-3p, at *1; also compare SSR 16-3p with SSR 96-7p (both policies set forth a two-step process to be followed in evaluating a claimant's testimony and contain the same factors to be considered in determining the intensity and persistence of a claimant's symptoms). In Andre v. Colvin, 6:14-cv-02009-JE (D.Or. Oct. 13, 2016) I recently concluded that, for this reason, retroactive application of the new SSR is appropriate. [1]  See Smolen, 80 F.3d at 1281 n.1 ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993)) (because regulations were intended to

---

[1] Other recent District of Oregon SSA dispositions have also incorporated SSR 16-3p into the analytical framework for evaluating ALJ findings regarding subjective symptom testimony. See, e.g., Mesmer v. Colvin, No. 6:15-cv-00947-MC, available at 2016 WL 5339728 (D.Or. Sept. 23, 2016); Burnstad v. Colvin, No. 6:15-cv-00921-SI, available at 2016 WL 4134535 (D.Or. Aug. 2, 2016).

OPINION AND ORDER – 8

incorporate prior Social Security Administration policy, they should be applied retroactively).

The new SSR clarifies that "subjective symptom evaluation is not an examination of an individual's character." Id. In other words, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. Rather, "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." Id. Thus, "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered . . . .'" Id. at *9. Instead, the finding "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." Id.

In evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record and consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." C.F.R. §404.1529(c). If substantial evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

**B.  Analysis**

In his application for disability benefits, Plaintiff reported that in his previous four jobs his speed in cutting and prepping foods had slowed and that he had been "let go" from two jobs

because of his slowness.  He reported anxiety about whether he would be fired because of his lack of speed and anger at himself for not being able to complete tasks as he was "supposed to." He wrote that he was fired from a job for his depression and anxiety. He reported that he experienced fatigue, could only walk a couple of blocks, and could only lift 10 pounds with his left arm. His impairments limited his ability to lift, squat, bend, stand, reach, walk, sit, kneel, hear, climb stairs, see, remember things, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. He reported he "clashed with a couple of bosses" because of their "lack of discipline" in responding to hostile work environments and the bad performance of other employees but that he did not otherwise have a problem with authority figures. Tr. 168-175.

At the hearing, Plaintiff testified that the prescription medications he takes are generally effective, that he could comfortably lift 10 to 20 pounds off and on over the course of the day, he can sit comfortably in a chair for no more than 45 minutes, can stand in place no more than an hour before he has to sit down and can usually walk two blocks or 20 minutes. Tr. 44. He testified that he was left-handed and had difficulty gripping, opening, moving or holding things with his left hand. Tr. 45. He lays down at least an hour a day due to headaches and "just feeling like junk." Tr. 45. He had been experiencing the headaches over the last year and a half and believed them to be migraines because they lasted most of the day. He took only acetaminophen to relieve the headache pain, which was what he had been given by the VA.[2] He testified that he had pain in his legs, hips and left arm; and was experiencing "a little bit" of depression, which included "anxiety and just feeling down." Tr. 46. Plaintiff testified that he lived alone, saw friends and family at least once a week, went to church and played cards, visited neighbors,

---

[2] Plaintiff received his medical treatment during the relevant period through the U.S. Veterans Affairs medical system.

could take public transportation, watched television, read, went shopping, and spent three or four hours a day on the computer "surfing the internet." Tr. 48-49.

The ALJ offered several reasons in support of her finding that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were inconsistent with the record as a whole.

First, the ALJ found that Plaintiff's activities of daily living were inconsistent with complete disability. An ALJ may support discounting a claimant's symptom allegations by identifying inconsistencies between the claimant's complaints and the claimant's activities of daily living. Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir.2002). Here, the ALJ noted that Plaintiff lived independently, was able to use public transportation, saw friends, went to church, read, played card and board games, and spent time on the computer. The ALJ also noted that at the hearing Plaintiff reported only a "little bit" of depression. Tr. 26. Plaintiff argues that his social activities depend upon his mental state. Pl. Brief. at 13. However, the record shows that Plaintiff considered himself a "loner" and enjoyed the independence brought by being "fairly solitary." Tr. 745.

Even if Plaintiff's activities do not rise to the level of transferable work skills, they are inconsistent with allegations of completely debilitating impairment. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir.2012) (ALJ may discredit a claimant's testimony when he or she reports activities of daily living that "indicat[e] capacities that are transferable to a work setting" or "contradict claims of a totally debilitating impairment") (citations omitted). Accordingly, inconsistencies between Plaintiff's activities of daily living and his complaints provided a clear and convincing reason to reject Plaintiff's testimony regarding the totally debilitating effects of his mental and physical limitations.

The ALJ also supported her evaluation of Plaintiff's testimony by noting inconsistencies in Plaintiff's reports of problems interacting with co-workers. The consistency of a claimant's own statements is a factor the ALJ properly considered in determining the effects of symptoms on the ability to perform work-related activities. SSR 16-3p available at 2016 WL 1119029 at *8. The ALJ is to compare "statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." Id.

At the hearing, Plaintiff testified that he lost one job due to anger issues with a fellow employee. Tr. 41.  He testified that he did not get along well with "know it alls" but that there had been not been any other instances where anger issues had affected his employment. Tr. 57-58. The ALJ contrasted this testimony with reports Plaintiff had made indicating that he had been let go from five jobs and quit two others due to interpersonal issues, Tr. 241; had often been terminated for being slow or for personality clashes, Tr. 1054; and "citing a list of restaurants and positions from which he had been let go for two general reasons, being slow and also having difficulty coping with personality problems." Tr. 1056.  These inconsistencies are a sufficient basis to support the ALJ's findings regarding Plaintiff's subjective symptom testimony. See, Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005)(inconsistencies in claimant's testimony can serve as clear and convincing reason for discrediting it).

Plaintiff also argues that the ALJ did not address his testimony that he had difficulty "hanging on to things" and failed to include any limitation in grasping in her hypothetical to the VE or in the RFC determination.  Although the ALJ must identify what testimony is inconsistent with the other evidence of record if that testimony is to be discounted, here, the ALJ incorporated into both the hypothetical to the VE and the RFC a limitation on "handling and fingering." I

agree with the Commissioner that the hearing transcript indicates that the ALJ intended "handling and fingering" – which are the terms used in the Dictionary of Occupational Titles (DOT) – to account for limitations in "grasping." Tr. 60. See also, SSR 85-15 at *7 (defining handling as "seizing, holding, *grasping*, turning or otherwise working primarily with the whole hand or hands)(emphasis added). Accordingly, I conclude that Plaintiff's argument that the ALJ erred in her assessment of his subjective symptom testimony by omitting a discussion of "grasping" is without merit.

Based upon a careful review of the ALJ's decision and the record, I conclude that the ALJ provided clear and convincing reasons supporting her decision to not fully credit Plaintiff's subjective symptom testimony. However, the ALJ also provided other reasons that were not legally sufficient. First, the ALJ noted that Plaintiff's 1999 crash injuries and closed head injury had been longstanding, had not previously prevented work and that there was no evidence of "drastic worsening" such that the ability to work was currently prevented. Tr. 26. The record shows that Plaintiff has not worked since his alleged onset date in 2007. Tr. 40. Although Plaintiff worked as a cook from 2000 until 2007 and held one position for almost four years, the record also reflects that none of his last three jobs lasted more than six months. Tr. 160. The ALJ herself determined that Plaintiff can no longer perform his past relevant work.

A claimant's previous ability to work despite an impairment is certainly relevant in assessing the credibility of a claimant alleging that the impairment is subsequently disabling. See Gregory v. Bowen, 844 F.2d 664, 666–67 (9th Cir.1988). However, a work attempt that fails because a claimant's impairments preclude satisfactory performance cannot support an adverse finding as to Plaintiff's subjective symptom testimony. E.g., Lingenfelter v. Astrue, 504 F.3d 1028, 1038 (9th Cir.2007).

The record reflects that Plaintiff has not worked since his alleged onset date, that his ability to work after the date of his motor vehicle crash became increasingly unsuccessful and that he ceased work altogether prior to his alleged onset date. Under the circumstances, the fact that Plaintiff was able to work after the 1999 crash was not a clear and convincing reason for the ALJ to discount his subjective symptom testimony.

The second insufficient reason is the ALJ's assertion that Plaintiff ceased vocational services with the Oregon Office of Vocational Rehabilitation Services (OVRS) because he was waiting for the outcome of his disability claim and not due to an inability to complete the assessment or participate in placement. Tr. 26. However, the record reflects that Plaintiff reported to OVRS that he was experiencing ongoing pain, and that "due to his pain and other physical limitations, he does not feel he can commit to working at his time." Tr. 671. This evidence was not inconsistent with Plaintiff's allegations and was not a valid reason for the ALJ to discount his testimony.

The ALJ also noted that Plaintiff had a 60% service connected disability for limitations of his ankle, knee, and lower leg but that the VA had not declared him unemployable. Considering that the 60% service connected disability comment was not a notice of disability rating from the VA but appeared in a chart note that did not address other of Plaintiff's impairments; and because the ALJ failed to articulate the aspects of Plaintiff's testimony that were inconsistent with this chart note, this evidence does not provide a clear and convincing reason for discounting Plaintiff's testimony. See SSR 16-3p (finding must be clearly articulated so as to allow assessment of how the adjudicator evaluated the individual's symptoms).

Nonetheless, the ALJ's inclusion of insufficient reasons does not invalidate her finding that Plaintiff's subjective symptom testimony should be discounted. Where, as here, substantial

evidence supports the ALJ's determination despite the inadequacy of some of an ALJ's reasons, that determination will be upheld. See Carmickle 533 F.3d at 1162.

## II.  **Evaluating Medical Opinion**

As noted above, Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of examining psychologist, Dr. Leia Hughey.

Dr. Hughey examined Plaintiff on February 25, 2013. She completed a Psychological Evaluation Report and a Medical Source Statement of Ability to Do Work Related Activities (Mental). Tr. 1054-1062. Dr. Hughey opined that Plaintiff had moderate to marked impairment in his ability to interact appropriately with supervisors or coworkers, mild impairment in his ability to interact appropriately with the public and mild to moderate impairment in his ability to respond appropriately to usual work situations and to changes in a routine work setting. Tr. 1061. She wrote "Mr. Mesecher is not an outgoing, warm or friendly person. He reports having lost jobs due to conflict with coworkers." Id. She opined that he had no limitations in understanding and remembering simple instructions but marked limitations in carrying out complex instructions. Dr. Hughey diagnosed Plaintiff with cognitive disorder, NOS and anxiety disorder. Tr. 1058.

The ALJ accepted Dr. Hughey's diagnoses of cognitive disorder and anxiety disorder as consistent with the medical evidence of record. However, she gave Dr. Hughey's opinions regarding Plaintiff's limitations in social functioning only "some weight." The ALJ discounted Dr. Hughey's opinion because she was "not a neutral source" and because the social limitations she assessed were based on Plaintiff's self-reports of losing jobs due to conflicts, which the ALJ found to be inconsistent with Plaintiff's testimony at the hearing.

OPINION AND ORDER – 15

**A. Standards**

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992).

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. Andrews, 53 F.3d at 1043. A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir.1995).

**B. Analysis**

As an initial matter, Plaintiff argues that Dr. Hughey's opinion was uncontradicted because the ALJ erred in relying on the opinions of examining psychologist Dr. Lahman and the state agency reviewing psychologist, Dr. Lundblad. He asserts that Dr. Lahman's opinion was based only on a brief assessment and that Dr. Lundblad was unaware of Dr. Hughey's "extensive testing." Pl. Brief at 18.

Plaintiff's arguments are unpersuasive. In formulating his evaluation, Dr. Lahman performed an interview, mental status examination and records review. He opined that Plaintiff's interaction with peers should be brief and routine and he should have minimal public interaction.

Tr. 807. His report reflects more than a "brief assessment." Tr. 802-807 and the ALJ was entitled

to rely on his opinion. Furthermore, Drs. Lahman and Lundblad were necessarily unaware of Dr.

Hughey's testing because her report was not obtained by counsel until almost two years after

they made their evaluations. Tr. 87, 802, 1054. Plaintiff's reliance on Beecher v. Heckler, 756

F2d. 693, 694-95 (9th Cir. 1985) is inapposite. In that case, the court concluded that a psychiatric

opinion submitted by a psychiatrist/neurologist was not uncontradicted by the record where all of

the other medical opinions submitted were provided by orthopedic surgeons or chiropractors and

were based only on a consideration of the claimant's physical impairments. Id. Here, in contrast,

Drs. Lahman and Lundblad, both psychologists, provided opinions based on evaluations of

Plaintiff's mental capabilities. The fact that their opinions were provided prior to Dr. Hughey's

evaluation does not negate their contradictory nature.

Because Dr. Hughey's opinion was contradicted, the ALJ was required only to provide

specific and legitimate reasons to reject the marked social limitations she assessed. The ALJ met

this standard.

First, the ALJ gave Dr. Hughey's opinion only "some weight" because she concluded she

was not a neutral source since her examination of Plaintiff had been arranged at the request of

Plaintiff's attorney. Plaintiff correctly asserts that the mere fact that a medical report is provided

at the request of counsel is not a legitimate basis for rejecting that report. Reddick v. Chater, 157

F.3d 715, 726 (9th Cir.1998). However, this is true only "in the absence of other evidence to

undermine the credibility" of the report and "[e]vidence of the circumstances under which the

report was obtained and its consistency with other records, reports, or findings could ... form a

legitimate basis for evaluating the reliability of the report." Id.

Here, the ALJ discounted Dr. Hughey's opinion regarding Plaintiff's social functioning for the additional reason that it was based on Plaintiff's reports of losing previous jobs due to social conflicts. As discussed above, the ALJ reasonably concluded that Plaintiff's testimony regarding social problems in his previous jobs was inconsistent with reports made to Dr. Hughey and other medical providers. This was a specific and legitimate reason for rejecting Dr. Hughey's opinion that Plaintiff had moderate to marked limitations in interacting appropriately with supervisors and co-workers. Because the ALJ provided at least one specific and legitimate reason for discounting Dr. Hughey's opinion, also including as a reason the fact that the opinion was obtained by Plaintiff's attorney was, at most, harmless error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or irrelevant mistakes harmless).

## III. Lay Witness Evidence

Plaintiff's sister, Dianna Barnett, completed a Third Party Function Report. She wrote that Plaintiff becomes irritable "very quickly," was "moody" and at times could not adjust to changes in routine. Tr. 182. Plaintiff contends that although the ALJ stated that she found Ms. Barnett's statements generally credible, she failed to consider statements regarding Plaintiff's "moodiness" and quick irritability and failed to assess any resulting limitations in his ability to respond appropriately to supervision. Plaintiff asserts that Ms. Barnett's statements regarding his social functioning should be fully credited. I disagree.

Ms. Barnett did not make any observations regarding Plaintiff's interactions with supervisors. Furthermore, the ALJ accounted for Plaintiff's limitations in social functioning in the RFC by limiting Plaintiff to "a predictable environment with clear expectations" and without public contact or teamwork assignments. Tr. 23. Although Plaintiff argues that with his moodiness and quick irritability "there is no reason to think that [he] would not be irritable with

supervisors," the ALJ's interpretation of the evidence was a rational one and will not be overturned here. Tommasetti, 533 F.3d at 1038 (ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record).

## IV. **The ALJ's Step Five Analysis**

Plaintiff contends that the ALJ did not meet the burden of establishing, at step five of the disability analysis that he could perform other jobs that existed in substantial numbers in the national economy because the vocational hypothetical did not accurately set out all of his impairments. Plaintiff reiterates his arguments regarding the ALJ's assessment of his testimony and Dr. Hughey's opinion. He also asserts that the ALJ's findings that he was moderately deficient in concentration, persistence and pace were inadequately accounted for in the RFC limitation to performing simple tasks.

## A.  **Plaintiff's Limitations in Concentration, Persistence and Pace**

An ALJ's residual functional capacity (RFC) assessment is separate and distinct from the special technique analysis applied at steps two and three. See 20 C.F.R. §§ 404.1520a(b)(1), 404.1546(c), 416.920a(b)(1), 416.946(c); SSR 96–8p. As the ALJ noted in her decision, the limitations identified in the "B" criteria "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at step 2 and 3 of the sequential evaluation criteria." Tr. 22. See, e.g., Dodds v. Astrue, CV No. 3:09–cv00332–AC, slip op. at 6 (D.Or. Dec. 28, 2010), available at 2010 WL 5662968 at *3 (B criteria used to determine whether impairment is severe enough to require RFC assessment, not to determine Claimant's RFC). Therefore, the ALJ did not err in omitting from the RFC assessment the specific finding set out at steps two and three.

Furthermore, the ALJ's RFC set out that Plaintiff could "understand and carry out simple instructions in a predictable environment with clear expectations." Tr. 23. This limitation adequately accounted for the deficiencies in concentration, persistence and pace that the ALJ assessed at steps 2 and three. See Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir.2008) ("an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony") (citations omitted); Bickford v. Astrue, 2010 WL 4220531, *11 (D.Or. Oct. 19, 2010) ("so long as the ALJ's decision is supported by medical evidence, a limitation to simple, repetitive work can account for moderate difficulties in concentration, persistence or pace") (citations omitted); Gillock v. Astrue, 2011 WL 2011 WL 4916499, *5 (D.Or. June 29), adopted by 2011 WL 4935996 (D.Or. Oct. 17, 2011) (same). In the present action, a careful review of the medical evidence and the ALJ's decision supports the conclusion that the ALJ's RFC adequately accounted for Plaintiff's mental limitations.

**B. RFC and Vocational Hypothetical**

In order to be accurate, an ALJ's vocational hypothetical presented to a VE must set out all of a claimant's impairments and limitations. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984). The ALJ's depiction of a claimant's limitations must be "accurate, detailed, and supported by the medical record." Tackett, 180 F.3d at 1101. If the assumptions set out in the hypothetical are not supported by the record, a VE's conclusion that a claimant can work does not have evidentiary value. Gallant, 753 F.3d at 1456. If the ALJ has applied the proper legal standard and the decision is supported by substantial evidence, the RFC assessment must be affirmed. E.g., Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.2005).

A careful review of the ALJ's decision supports the conclusion that the ALJ did not err in concluding, at step five of her analysis, that Plaintiff could perform jobs that existed in substantial numbers in the national economy. As discussed above, the ALJ provided sufficient reasons for discounting Plaintiff's testimony and the statements of the lay witness. The ALJ thoroughly summarized and evaluated relevant medical evidence in the record, and her RFC assessment was supported by substantial evidence cited in her decision. In determining that Plaintiff could perform jobs that existed in substantial numbers in the national economy, the ALJ relied on the VE's response to a vocational hypothetical that included all of the limitations that the ALJ found were credible and supported by substantial evidence in the record. That reliance was proper. E.g., Id. at 1217–18.

## Conclusion

For the reasons set forth above, the Commissioner's decision is AFFIRMED and this action is dismissed with prejudice.

DATED this 10th day of November, 2016.

_____/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge

OPINION AND ORDER – 21